## UNITED STATES v. KEYES.

*(Circuit Court, D. New Hampshire.  March 13, 1882.)*

1. **CRIMINAL LAW—POSSESSION OF UNSTAMPED TOBACCO.**

   Every person who has in his possession, not in a manufactory, manufactured tobacco, in any quantity, unstamped, whether the same is refuse and worthless or otherwise, or whether it had been purchased to be remanufactured into snuff or not, or whether a tax had been paid on it prior to the passage of the act of congress making it criminal to have in possession unstamped manufactured tobacco, is liable for the penalty imposed in section 71 of the act of 1868, (15 St. at Large, 156.)

2. **SAME—GIST OF OFFENCE.**

   The gist of the offence is having in possession unstamped manufactured tobacco, irrespective of the considerations of value, purpose, or payment of the tax.

3. **SAME—POWER OF CONGRESS.**

   Congress has as much power to say that the tax shall be paid in a particular way,—that is, by stamps,—as it has to impose any tax, and all its requirements must be complied with.

On Motion for New Trial.

*U. S. Atty. Role,* for plaintiff.

*Mr. Marston,* for defendant.

CLARK, D. J.  The respondent was indicted under the seventy-first section of the act of 1868, (15 St. at Large, 156,) for having in his possession on the first day of May, 1870, and from that time, in a certain barn, to the twenty-eighth day of the same May, and not in a manufactory of tobacco, or in a bonded warehouse, 200 pounds of manufactured tobacco, without the proper stamps affixed thereto, and was found guilty by the jury.  It appeared in evidence that some time previous to May, 1870, the respondent purchased in Boston of Russell & Willey some 226 pounds of tobacco, the remnants of various lots, of which they had previously sold the balance.  It was manufactured tobacco, in plugs, some "cavendish," some "navy," but damaged.  The respondent paid 35 cents per pound for it, and it was packed in two barrels.  When Russell & Willey sold it it was unstamped, and no taxes had been paid upon it.  The respondent knew this and so purchased it.  He gave his note in payment for it.  When the note became due he declined to pay it, because the tobacco had been afterwards sold in violation of law, and complained of Russell for selling him unstamped tobacco, and caused him to be arrested.  Russell settled with the officers by paying, by way of pen

alty or tax, such sum as was required, and was discharged. In May, 1870, a United States inspector of tobacco examined the store of the respondent in Concord, in this district, and found at the end of some boxes, which were opened and stamped, a "lump" or bunch of tobacco not in any box, and unstamped, containing some 20 or 25 pounds. He also examined the respondent's barn, which was some quarter of a mile away from his place of business, and there he found two barrels, one full and the other two-thirds full of tobacco; some of the same kind as the "lump" he had seen at the store; some "cavendish" in plugs, and some "navy"—different kinds; some loose; some in boxes; some in lumps, unstamped. There were 166 pounds of it,—some 60 pounds less than he had purchased of Russell & Willey. The respondent's counsel requested the court to instruct the jury:

(1) That if the tobacco was refuse and worthless, the remains of various lots accumulated by a dealer prior to the act imposing taxes on distilled spirits, tobacco, and for other purposes, "approved July 20, 1868," then the respondent is not liable for having said tobacco in his possession unstamped; (2) that if the tobacco was refuse and worthless, being the remains of lots which had been manufactured prior to the passage of said law of 1868, and the respondent bought it for the purpose of remanufacture into snuff and cigars, then the respondent is not liable, under this indictment, to the penalties imposed by the seventy-first section of said law, for having the tobacco in his possession unstamped, and in the condition in which he bought it; and, (3) that if the government tax had been paid on said tobacco prior to the time when it is alleged in the indictment that the respondent had the same in his possession unstamped, then the respondent is not liable to the penalties imposed by said law of 1868 for having it in his possession unstamped.

The court refused these instructions, and charged the jury that if the respondent had in his possession manufactured tobacco unstamped in any quantity, at the time charged in the indictment, whether the same was refuse and worthless or otherwise, they should find the respondent guilty; that whether it was the remains of various lots that had been manufactured before the passage of the act was immaterial, or whether the respondent bought it to remanufacture into snuff or cigars. The respondent, by his counsel, moves for a new trial, because the court refused to give the instructions prayed for, and because of the instructions given. The respondent's counsel contends:

(1) That if the tobacco was refuse and worthless, the remains of various lots accumulated by a dealer prior to the act of July 20, 1868, then the defendant is not liable; (2) that if it were such tobacco as aforesaid and thus

accumulated, and the respondent bought it for the purpose of remanufacture into snuff or cigars, then the defendant is not liable for having it in his possession, as he bought it; and, (3) that if the government tax had been paid upon it prior to the time alleged in the indictment, then the defendant is not liable.

The verdict of the jury settles conclusively the fact that this was manufactured tobacco. The Laws of 1868, July 30, § 78, (15 St. at Large, 159,) provide that "after the first day of January, 1869, all smoking, fine-cut chewing tobacco, or snuff, and after the first day of July, 1869, all other manufactured tobacco of *every* description, shall be taken and deemed as having been manufactured after the passage of this act,"—that is, the act of July 20, 1868; so that this tobacco, whenever manufactured, being on hand after the time fixed by the statute, must be taken and deemed to have been manufactured since the passage of that act, and be treated as such. If actually manufactured before that time, it must be treated as if manufactured afterwards, and the court could not instruct the jury that the defendant was not liable if the tobacco was manufactured before. The law settled that matter, and it was a matter immaterial to the jury, as the judge who tried the cause charged. Again, the statute of July 20, 1868, § 71, under which section the respondent is indicted, (15 St. at Large, 156,) provides that any person who shall use, sell, or offer for sale, or have in possession, except in the manufactory or in a bonded warehouse, any manufactured tobacco, or snuff, without proper stamps affixed and cancelled, shall on conviction thereof be liable to the penalty therein prescribed. The language is *any* manufactured tobacco. There is no exception of refuse or worthless tobacco, or of tobacco to be remanufactured, or of tobacco on which the tax has been paid, or any other kind. Therein is included every kind of manufactured tobacco, no matter what its value or condition, or what the person who has it in possession is about to do with it, if it be out of the manufactory, and not in a bonded warehouse, it must be stamped and the stamps cancelled.

The government has imposed a tax on all kinds of manufactured tobacco, even refuse scraps and sweepings; have required it to be put up in a particular way or ways, and to be stamped with stamps, for the payment of the tax, and the stamps cancelled; and have imposed this penalty, not for having in possession manufactured tobacco on which the tax has been paid, but manufactured tobacco on which

stamps have not been placed and cancelled. Congress has as much power to say the tax shall be paid in a particular way,—that is, by stamps,—as it has to impose any tax, and all its requirements in that behalf must be complied with. Considerations of value and purpose, and payment of the tax, might be addressed to the prosecuting officers, but this provision of the statute is quite too plain and imperative for the court to limit its obvious meaning.

The instructions of the court were correct, and there must be judgment on the verdict.